**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

STEVEN BALLARD

Plaintiff,

Case No. 2:17-cv-10904-GCS-EAS

v.

Hon. George Caram Steeh

THE TILE SHOP, LLC,
a foreign limited liability corporation,

Defendant.

---

Charlotte Croson (P56589)
Joseph X. Michaels (P79084)
NACHTLAW, P.C.
Attorneys for Plaintiff
101 N. Main St., Suite 555
Ann Arbor, Michigan 48104
(734) 663-7550
ccroson@nachtlaw.com
jmichaels@nachtlaw.com

---

**PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND**

Plaintiff, Steven Ballard, by and through his attorneys, NACHTLAW, P.C., hereby alleges as follows:

**Introduction**

1. Plaintiff, Steven Ballard, brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., the Michigan Elliott-Larsen

Civil Rights Act, MCL § 37.210 *et seq*., the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*., the Michigan Persons with Disabilities Civil Rights Act, MCL 37.1101, *et seq*., and the Michigan Worker's Disabilities Compensation Act, MCL 418.101, *et seq*., to remedy illegal discrimination, harassment, and retaliation by Defendant the Tile Shop, Inc.

**Parties, Jurisdiction and Venue**

2. Defendant, The Tile Shop, LLC, is foreign limited liability corporation conducting business throughout the State of Michigan, including within the Eastern District of Michigan.

3. Defendant's registered office is in the State of Michigan and located at 40600 Ann Arbor Rd. E, Suite 201, Plymouth, MI 48170, within the Eastern District of Michigan.

4. Plaintiff, Steven Ballard, is a former employee of The Tile Shop, LLC and a resident of Toledo, Ohio.

5. At all relevant times, Plaintiff was employed at Defendant's location in Ottawa Lake Michigan, located in Monroe County within the Eastern District of Michigan.

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this case arises from federal law.

7. Jurisdiction over supplemental state law claims is proper under 28 U.S.C. § 1367 as they arise from the same case and controversy.

8. Venue in this Court is proper under 42 U.S.C. § 2000e-5(f)(3) as this is the judicial district in which the unlawful employment practices occurred and the district in which the relevant employment records are kept and maintained. Venue is proper under 28 U.S.C. § 1391(b) as this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

**Statement of Facts**

9. Plaintiff is African-American and was formerly employed by Defendant at its location in Ottawa Lake, Michigan.

10. Plaintiff began his employment with Defendant in December, 2013 as a Builder.

11. Upon information and belief, Plaintiff was one of only four African-Americans in Defendant's workforce of over 200 employees at its Ottawa Lake location.

12. Throughout his employment, Plaintiff suffered racial discrimination, a continuing and ongoing racially hostile work environment and retaliation for opposing racial harassment and discrimination.

13. Soon after Plaintiff was hired, he was physically attacked by a white coworker who referred to Plaintiff as "boy." One of Plaintiff's supervisors observed the attack and did not intervene or take any remedial action.

14. Plaintiff injured his ankle in this attack and filed a claim for worker's compensation, which Defendant attempted to deny because it characterized the attack as "horseplay."

15. Throughout Plaintiff's entire employment, co-workers and supervisors regularly and openly made racially derogatory remarks regarding African-Americans.

16. In one instance, a coworker referred to his biracial grandchildren as "little niglets." Management was aware of these actions but took no remedial action.

17. Additionally, on at least two occasions someone wrote "kill the niggers" or similar words on the bathroom wall.

18. Plaintiff immediately informed the supervisor, who washed the slurs off but took no remedial action.

19. In another instance, a coworker showed pictures of himself to a group of coworkers. The coworker refused to show them to Plaintiff. Another employee described the pictures to Plaintiff as "nazi pictures."

20. Plaintiff told his immediate Supervisor who asked Plaintiff "why does that offend you." The supervisor took no remedial action.

21. Throughout Plaintiff's employment, his immediate Supervisor and Lead Supervisor repeatedly referred to Plaintiff as "boy."

22. Plaintiff asked his Supervisor at least ten times to stop calling him boy, but the Supervisor continued.

23. Plaintiff's Supervisor referred to him as "boy" approximately three weeks prior to his termination.

24. Plaintiff's Supervisor also failed to inform Plaintiff of overtime opportunities which were overwhelmingly given to white employees.

25. When Plaintiff confronted his supervisor about this discrimination and harassment, his supervisor told Plaintiff that he was a "trouble maker" who "can't keep quiet" and was "always complaining about something."

26. On October 21, 2015, Plaintiff injured his shoulder while at work. Plaintiff went to the ER as ordered by Plaintiff's supervisor. The ER doctor instructed Plaintiff to follow up with his regular physician.

27. The next day, October 22, 2015, Plaintiff was in severe pain at work and had difficulty performing basic tasks.

28. At the end of the day, Defendant terminated Plaintiff and told Plaintiff it was because he had exceeded the maximum number of allowed absences.

29. Plaintiff's absence the previous day, which ostensibly put him over the point limit, was due to solely a work-related injury and Plaintiff was ordered to leave work to go the ER.

30. Defendant did not offer Plaintiff accommodation of any kind, including extended leave or light-duty work.

31. When Plaintiff followed up with his regular physician on November 2, 2015, he was formally diagnosed with a sprained shoulder/elbow, Impingement Syndrome and Lateral Epicondylitis.

32. Plaintiff's physician placed him on restrictions, including no overhead lifting and no lifting more than 30 pounds.

33. Plaintiff filed a worker's compensation claim regarding this injury.

34. Upon information and belief, Plaintiff was replaced by a white employee.

35. Plaintiff filed a timely charge of discrimination with the U.S. Equal Opportunity Employment Commission ("EEOC") and received a Dismissal and Notice of Right to Sue received by Plaintiff on December 27, 2016.

## Causes of Action

### Count I
### Title VII Race Discrimination and Hostile Work Environment
### 42 U.S.C. § 2000e(a)

36. Plaintiff herein reincorporates his allegations in the paragraphs above.

37. At all relevant times, Defendant was an employer with at least 15 employees, and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b).

38. Plaintiff is a member of a protected group because of his race, African-American.

39. Defendant subjected Plaintiff to severe and pervasive race-based harassment, thereby creating an objectively hostile work environment.

40. Defendant's managerial and supervisory employees were aware of the objectively hostile race-based harassment and failed to take remedial action.

41. Defendant failed to exercise reasonable care to prevent and promptly correct the harassing behavior

42. Plaintiff was subjected to adverse employment actions, up to and including termination.

43. Defendant's actions were motivated by unlawful discrimination against Plaintiff because of his race.

44. But for Plaintiff's race, he would not have been terminated.

45. Defendant's course of conduct was done with reckless disregard of Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

46. As a result of Defendant's unlawful conduct, Plaintiff was harmed, and continues to be harmed, in that he has suffered economic and non-economic loss,

including. but not limited to, lost wages, damage to professional reputation, emotional distress, outrage and humiliation.

**Count II**
**Title VII Retaliation**
**42 U.S.C. § 2000e-3(a)**

47. Plaintiff herein reincorporates his allegations in the paragraphs above.

48. At all relevant times, Defendant was an employer with at least 15 employees, and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b).

49. Defendant engaged in federally protected activity by, among other things, repeatedly complaining about and opposing Defendant's objectively hostile racial environment and racial discrimination.

50. Plaintiff was subjected to adverse employment actions, up to and including termination.

51. Defendant's actions were motivated by unlawful retaliation against Plaintiff because of his protected activity.

52. But for Plaintiff's protected activity, he would not have been terminated.

53. Defendant's course of conduct was done with reckless disregard of Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

54. As a result of Defendant's unlawful conduct, Plaintiff was harmed, and continues to be harmed, in that he has suffered economic and non-economic loss, including but not limited to, lost wages, damage to professional reputation, emotional distress, outrage and humiliation.

**Count III**
**ELCRA Race Discrimination and Hostile Work Environment**
**MCL 37.2202(1)(a)**

55. Plaintiff herein reincorporates his allegations in the paragraphs above.

56. At all relevant times, Defendant was an employer, and Plaintiff was an employee covered by and within the meaning of the Elliott-Larsen Civil Rights Act. MCL § 37.2101.

57. Plaintiff is a member of a protected group because of his race, African-American.

58. Defendant subjected Plaintiff to severe or pervasive race-based harassment, thereby creating objectively hostile work environment.

59. Defendant's managerial and supervisor employees were aware of the objectively hostile race-based harassment and failed to take remedial action.

60. Defendant failed to exercise reasonable care to prevent and promptly correct the harassing behavior

61. Plaintiff was subjected to adverse employment actions, up to and including termination.

62. Defendant's actions were motivated by unlawful discrimination against Plaintiff because of his race.

63. But for Plaintiff's race, he would not have been terminated.

64. As a direct and proximate result of Defendant's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of career opportunities; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation.

**Count IV**
**ELCRA Retaliation**
**MCL 37.2202(1)(a)**

65. Plaintiff herein reincorporates his allegations in the paragraphs above.

66. At all relevant times, Defendant was an employer, and Plaintiff was an employee covered by and within the meaning of the Elliott-Larsen Civil Rights Act. MCL § 37.2101.

67. Defendant engaged in protected activity by, among other things, repeatedly complaining about and opposing Defendant's objectively hostile racial environment and racial discrimination.

68. Defendant's actions were motivated by unlawful retaliation against Plaintiff because of his protected activity

69. Plaintiff was subjected to adverse employment actions, including but not limited to termination.

70. But for Plaintiff's protected activity, he would not have been terminated.

71. As a direct and proximate result of Defendant's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of career opportunities; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation.

**COUNT V**
**ADA Disability Discrimination**
**<u>42 U.S.C. § 12112</u>**

72. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

73. At all relevant times, Defendant was a covered entity under the ADA as defined by 42 U.S.C. § 12111(2).

74. At all relevant times, Plaintiff was Defendant's employee as defined by 42 U.S.C. § 12111(4).

75. Plaintiff was a "qualified individual with a disability" as defined in 42 U.S.C. § 12131(2) by virtue of his shoulder injury which substantially limited a number of major life activities including, but not limited to, working and lifting.

76. Defendant perceived Plaintiff to have a disability based on this condition.

77. Plaintiff was not afforded a reasonable accommodation of any kind and was instead terminated.

78. Based on his actual and perceived disabilities, Plaintiff has been wrongfully denied employment opportunities by Defendants.

79. Plaintiff was subjected to adverse employment actions, including but not limited to termination.

80. Defendant's decision to discriminate against and ultimately discharge Plaintiff was motivated by Plaintiff's disability and/or Defendant's assumptions and unreasonable perceptions of Plaintiff's physical condition.

81. Defendant's actions in violation of the ADA were willful.

**Count VI**
**PWDCRA Disability Discrimination**
**MCL 37.1102**

82. Plaintiff herein reincorporates its allegations in the paragraphs above.

83. At all relevant times, Defendants were employers, and Plaintiff was an employee covered by and within the meaning of the Persons With Disabilities Civil Rights Act. MCL § 37.1201.

84. Plaintiff is an individual with a disability by virtue of his shoulder injury which substantially limited a number of major life activities including, but not limited to, working and lifting.

85. Defendant perceived Plaintiff to have a disability based on this condition.

86. Plaintiff was not offered a reasonable accommodation of any kind and was instead terminated.

87. Based on his actual and perceived disabilities, Plaintiff has been wrongfully denied employment opportunities by Defendants.

88. Plaintiff was subjected to adverse employment actions, including but not limited to termination.

89. As a direct and proximate result of Defendant's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of career opportunities; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation.

**Count VII**
**Worker's Compensation Retaliation**
**<u>MCL § 418.301(11)</u>**

90. Plaintiff herein reincorporates its allegations in the paragraphs above.

91. MCL § 418.301(11) provides "A person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under this act or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act."

92. Plaintiff was an employee as defined in the Act and was injured on the job.

93. Plaintiff exercised his rights under the Act by making a claim for worker's compensation benefits, and taking time off to see a doctor for a work-related injury.

94. Plaintiff suffered an adverse employment action, termination.

95. Plaintiff's worker's compensation claim was a motivating factor in Defendant's decision to terminate Plaintiff.

96. As a direct and proximate result of Defendant's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of career opportunities; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation.

**Relief Requested**

For all of the foregoing reasons, Plaintiff, Steven Ballard, demands judgment against Defendants as follows:

a. Compensatory damages for monetary and nonmonetary loss in whatever amount he is found to be entitled;

c. Exemplary and punitive damages in whatever amount he is found to be entitled;

d. A judgment for lost wages and benefits, past and future, in whatever amount he is found to be entitled;

e. An order of this Court reinstating Plaintiff to the positions he would have if there had been no wrongdoing by Defendant;

f. An injunction of this Court prohibiting any further acts of discrimination by Defendants;

g. An award of interest, costs and reasonable attorney fees; and

h. Whatever other equitable relief this Court may find appropriate.

Respectfully submitted,

NACHTLAW, P.C.

*/s/ Joseph X. Michaels*
Joseph X. Michaels (P79084)
Attorney for Plaintiff

Dated: April 10, 2017

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

STEVEN BALLARD

Plaintiff,

Case No. 2:17-cv-10904-GCS-EAS

v.

Hon. George Caram Steeh

THE TILE SHOP, LLC,
a foreign limited liability corporation,

Defendant.

---

Charlotte Croson (P56589)
Joseph X. Michaels (P79084)
NACHTLAW, P.C.
Attorneys for Plaintiff
101 N. Main St., Suite 555
Ann Arbor, Michigan 48104
(734) 663-7550
ccroson@nachtlaw.com
jmichaels@nachtlaw.com

---

**DEMAND FOR TRIAL BY JURY**

Plaintiff, by and through his counsel, hereby demands a trial by jury as to all those issues so triable as of right.

Respectfully submitted,

NACHTLAW, P.C.

/s/ *Joseph X. Michaels*
Joseph X. Michaels (P79084)
Attorney for Plaintiff

Dated: April 10, 2017